SMITH, Respondent, v. SMITH, Appellant

(24 N. W.2d 8.)

(File No. 8802.   Opinion filed August 15, 1946.)

**Davenport, Evans & Hurwitz,** of Sioux Falls, for defendant and Appellant.

**J. H. Lammers,** of Madison, for plaintiff and Respondent.

CASH, Circuit Judge. This is an application and petition to modify a decree of divorce granted by the Circuit Court of Lake County, South Dakota, on the 6th day of May, 1943, to plaintiff and respondent, Anna Smith, from defendent and appellant, Charles Smith.

Plaintiff and defendant were married January 13, 1936, and lived and cohabited together until on or about April 23, 1943. One child was born to this marriage, which child died in infancy. They were divorced May 6, 1943. A child, Linda Kay Smith, was born to plaintiff on January 13, 1944, and was a normal baby. Plaintiff brings this action to modify the decree of divorce to provide for the care and support of this child, until she reaches the age of her majority.

The application to modify the decree of divorce was heard before the Circuit Court of Lake County and judgment was made and entered by the Court in favor of plaintiff and respondent, adjudging the defendant and appellant to be the father of the child, Linda Kay Smith. No provision was made in the decree of divorce for this unborn child. From this judgment the defendant has appealed.

■ For his defense in this action the appellant attempts to prove that another man was the father of the child; that the marital relations of the respondent and appellant had not occurred for quite a period of time before the granting of the divorce; that appellant was sterile and incapable of procreation.

SDC 14.0301 provides:

All children born in wedlock are presumed to be legitimate. All children of a woman who has been married, born within ten months after dissolution of the marriage are presumed to be legitimate children of that marriage. * * * The issue of all marriages null in law or dissolved by divorce, are legitimate."

SDC 14.0302 provides:

"The presumption of legitimacy can be disputed only by the husband or wife, or the descendant of one or both of them. Illegitimacy in such cases may be proved like any other fact."

As to the presumption of legitimacy this court said In re Scott's Estate, 61 S. D. 253, 248 N. W. 247, 248:

"This presumption of legitimacy is one of the very strongest, if not the strongest, presumption known to the law. Adger et al. v. Ackerman, 8 Cir., 115 F. 124. It is not conclusive, however, and may be rebutted, but the person who assails the legitimacy of another has the burden of overcoming this presumption and it must be proved, as said by some courts, by evidence clear and irrefragable, and by others that the evidence must be clear and convincing; and again, that the evidence of illegitimacy must lead to a conclusion that is strong and irresistible."

See also 10 C.J.S., Bastards, § 3; Annotation 128 A.L.R. 713.

This presumption placed upon the defendant the burden of proving by clear and convincing evidence that he was not the father of the child, and this burden rested upon defendant throughout the entire trial. The trial court determined that the evidence was insufficient to establish illegitimacy.

■ On appellant's first defense the trial court found against the appellant, and a careful study of the testimony on that issne would warrant nothing more than a suspicion, which under the law would not justify the court in branding the child as a bastard. No useful purpose would be served by setting out this testimony in the record.

■ On the issue of marital relations between the parties, the evidence was in direct conflict. They lived together in the same house at the time the child was conceived. No useful purpose would justify setting forth the evidence in this opinion. The trial court heard the witnesses, observed them on the stand and found against the appellant. A study of this testimony shows no reason for modifying the decision of the trial court.

Another defense asserted by the appellant is that he was sterile and incapable of propagation at the time conception must have taken place. Appellant's evidence consists in testimony of physicians to the effect that appellant was sterile in August and September 1944, and that no child was conceived by the parties for more than six years preceding the birth in January, 1944, although both parties desired children. The question is whether this evidence requires a finding of sterility at the time the child was conceived. The rule as stated in II Wigmore on Evidence, § 225, is as follows:

"In showing the existence at a given time of any physical condition (skill, strength, health, or the like), the existence of such a condition at a prior or subsequent time, (being one of the classes of evidence noted ante, § 190) is evidential. The limits of time over which such evidence may range must depend on the circumstances of each case as to the probability of intervening changes, and should be left entirely within the discretion of the trial judge."

█ One physician testified that he examined the appellant four times in August and September, 1944; that he found from such examination that appellant was sterile at that time, due to non-motility of the sperm. He further testified that in his opinion this condition was one of long duration. This physician further testified on cross-examination as follows:

"Q. Now it is a fact, isn't it, Doctor, that a male and female, husband and wife, go along for several years and have no babies and then they have one. That's true, isn't it? A. Yes.

"Q. It is possible, isn't it? A. Sure.

"Q. You will find it in quite a few cases? A. I suppose so.

"Q. That could have happened to the Smiths could it not? A. I suppose it could.

"Mr. Lammers: That is all."

He then qualified this cross-examination on redirect examination as follows:

"Q. Could it have happened, taking into consideration the condition in which you found this man, in your opinion? A. Not in the condition his sperm was found, no.

"Q. Not in the condition you found Mr. Smith? A. No.

"Q. And were those conditions or was that condition clearly one of long standing? A. Yes."

Another physician called by respondent made a similar examination in October, 1944. He testified that appellant was then sterile but that he could not say from this fact that such sterility existed at the time the child was conceived. He testified as follows:

"In view of these findings, I would say that Mr. Smith is definitely sterile at the present time but this does not necessarily mean that he was sterile at the time his wife became pregnant. It is perfectly possible for a man to be sterile at one time and not sterile at another. This is particularly true in the type of sterility where there are sperm cells present. His present sterility is due to the fact that the sperm cells were killed by his secretions after they had been formed in his testicles and it is perfectly possible that in the spring of 1943 his secretion may not have been killing his sperm cells. This point, of course, can not be proved at this time."

The circuit court decided that this evidence failed to establish that appellant was sterile at the time the child was conceived. We hold, in view of the state of the record, referred to above, no error was committed in so finding.

During the trial of this case blood tests were taken of the appellant, respondent, and the child. These tests disclosed that the blood of all three fell into Group "O." The results of these tests are not conclusive that appellant is the father of the child. It proves only that the blood tests were all in the same group. The blood test of William Whalen, under suspicion by appellant as the father of the child, was in Group II(A), which is not conclusive that he could not have been the father of the child. The blood tests, therefore are not helpful.

The child was in the courtroom at the request of the trial judge and observed by him. The appellant made

no protest or objection to the child being present, and cannot now predicate error thereon. State ex rel. Larson v. Benson, 46 S. D. 565, 195 N. W. 437.

 We cannot say in this action that the trial court erred in holding that appellant failed to establish he was not the father of the child.

The decision of the trial court is affirmed.

CASH, Circuit Judge, sitting for POLLEY, J.
All the Judges concur.